UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| MARSHA CAMPBELL, | : Case No. 3:20-cv-00254 |
| Plaintiff, | : District Judge Michael J. Newman |
| | : Magistrate Judge Sharon L. Ovington |
| vs. | : |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

In September 2016, Plaintiff Marsha Campbell filed an application for Disability Insurance Benefits and for a period of such benefits. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge Stuart Adkins concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review, and she filed the present action.

Plaintiff seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm ALJ Adkins' non-disability decision.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 10), the Commissioner's Memorandum in Opposition (Doc. No. 13), and the administrative record (Doc. No. 7).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since March 19, 2016. At that time, Plaintiff was forty-six years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). She has at least a high school education.

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 7-2, PageID 61-75), Plaintiff's Statement of Errors (Doc. No. 10), and the Commissioner's Memorandum in Opposition (Doc. No. 13). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §423 (d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. THE ALJ'S DECISION

As noted previously, it fell to ALJ Adkins to evaluate the evidence connected to Plaintiff's application for benefits. In doing so, he considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful activity since the alleged onset, March 19, 2016.
>
> Step 2: Plaintiff has the severe impairments of cervical and thoracic degenerative disc disease, hypertension, obesity, adjustment disorder, and depression.
>
> Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work…with the following exceptions: The claimant must be permitted to alternate between sitting and standing every 20 minutes while at the workstation. No more than frequent reaching, handling, fingering, and feeling bilaterally in all directions. No more than occasional kneeling, crawling, pushing and/or pulling with the left upper extremity, or climbing of ramps and stairs. No climbing ladders, ropes, or scaffolds. No exposure to extreme cold, extreme heat, humidity, dust, odors, fumes, or pulmonary irritants. No exposure to unprotected heights or dangerous machinery. The claimant can perform simple tasks, but not at a production rate pace. No more than frequent interaction with supervisors, co-workers, and the general public. The claimant can tolerate occasional changes to a routine work setting, defined as 1-2 per week."
>
> Step 4: Plaintiff was unable to perform any of her past relevant work.
>
> Step 5: Plaintiff could perform a significant number of jobs that exist in the national economy.

(Doc. No. 7-2, PageID 64-75). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 74-75.

## V.    DISCUSSION

Plaintiff primarily challenges the residual functional capacity assessment. She asserts that error occurred in evaluating the statements about her symptoms and limitations, and in assessing the combined impact of her impairments. Furthermore, Plaintiff reasons that, if reversal or remand cannot be made on the evidence of record, new and material evidence supports remand under sentence six of 42 U.S.C. § 405(g).

### A.    Residual Functional Capacity Assessment

Plaintiff's first assignment of error centers on the assessment of the frequency, intensity, and limiting effects of her reported symptoms. She argues that, had her statements as to her symptoms and limitations been properly assessed, the ALJ would have determined that she was more limited in her ability to use her upper extremities.

In years past, an assessment of symptom severity would have delved into the murky realms of credibility. *E.g., Rogers*, 486 F.3d 246-49; *cf. Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) ("The administrative law judge must … evaluate the applicant's credibility with great care. His responsibility is all the greater because determinations of credibility are fraught with uncertainty…." (citation omitted)). More recently, the Social Security Administration eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character…." Soc. Sec. R. 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017) (effective March 28, 2016).

5

The Social Security Administration uses a two-step process for evaluating an individual's symptoms. First, the ALJ must determine whether an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* at *3. Second, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which the individual's symptoms limit her ability to perform work-related activities. *Id.* at *4. To do this, the ALJ must examine the entire case record, including the objective medical evidence; the individual's relevant statements; statements and other information provided by medical sources and others; and any other relevant evidence in the record. *Id.* at *4-5.

In addition to all of the evidence, the ALJ should consider multiple factors such as "the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; [and] the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms…" *Id*. at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3). However, not every factor will be discussed in every case. If there is no evidence regarding one of the factors, that factor will not be addressed in the assessment. Soc. Sec. R. 16-3p, 2017 WL 5180304, at *8.

The second step of this two-step inquiry is at issue in the present case. At this step, the ALJ determined that some of Plaintiff's statements were not consistent with, or corroborated by, the medical evidence of record. Plaintiff argues that the reasons for this determination are not supported by the record. The undersigned disagrees.

The determination at the second step rested, in part, on Plaintiff's statements about her symptoms and limitations relating to her mental impairments. The ALJ found that her

6

statements were inconsistent and unverifiable because her complaints of memory deficits were "almost entirely self-reported" and there was no indication that she sought mental health counseling or related treatment. (Doc. No. 7-2, PageID 71). Likewise, while medical records showed Plaintiff had occasional memory issues, they were "based only on the claimant's own reporting, rather than on independent observations." *Id.*

This determination is supported by the record. On examination, Angela M. Prickett, CNP, repeatedly observed that Plaintiff's memory "appear[ed] normal," and that she was "a good historian." (Doc. No. 7-7, PageID 849, 853, 857, 861). On a few occasions, Ms. Prickett's treatment records reflect that Plaintiff reported that she was "becoming forgetful." *Id.* at 1054, 1058, 1062. However, as the ALJ reasonably considered, these were Plaintiff's subjective reports, not Ms. Prickett's own independent observations. Likewise, the ALJ reasonably considered Plaintiff's lack of mental health counseling or related treatment. *See* Soc. Sec. R. 16-3p, 2017 WL 5180304, at *9 ("…if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints…we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Despite these inconsistencies, the ALJ accommodated her statements to the extent that they were consistent with the objective medical evidence. For instance, he limited Plaintiff to simple tasks, but not at a production rate pace due to her concentration difficulties. Plaintiff had reported "that she has difficulty concentrating and cannot pay attention for more than 30 minutes at a time." *Id.* at 66. This was consistent with her

7

hearing testimony and the observations of consultative psychologist, Dr. Haley O'Connell, who found Plaintiff's distractibility interfered with her attention and concentration. *Id.*

Additionally, while some of Plaintiff's statements about the limiting effects of her hypertension were consistent with the medical evidence, others were not. Plaintiff reported "that a number of surgeries have been put off because of her high blood pressure," but this was not supported by the medical evidence of record. *Id.* at 70. The record was left open after the hearing due to an upcoming examination with blood pressure testing. *Id.* at 70-71. Yet, these examination records, which may have supported her statements, were not submitted. Despite the record being left open for this purpose, Plaintiff's "representative stated that all records had been submitted, and requested that the record be closed." *Id.*

Nonetheless, her statements about the limiting effects of her hypertension were also accommodated to the extent that they were consistent with the medical evidence. Plaintiff testified that standing for extended periods of time worsened her hypertension. Her residual functional capacity reflects that she must be permitted to alternate between sitting and standing every twenty minutes and she is also restricted from "exposure to extreme temperature and respiratory irritants in order to prevent exacerbation of [her] hypertension." *Id.* at 67, 68. She does not assert that greater limitations were needed.

Plaintiff's remaining assertions heavily focus on the assessment of her cervical and thoracic degenerative disease. She argues that error occurred as a matter of law because her statements about symptoms and limitations relating to this impairment were ignored. More specifically, she asserts that the ALJ ignored her statements regarding "progressive hand numbness and tingling" that caused constant interruption in her left hand and varying

8

interruption in her right hand as well as "excruciating pains" that traveled down her arms into her hands. (Doc. No. 10, PageID 1406). She also alleges that he overlooked statements that showed her symptoms "interfered with her ability to grasp and manipulate objects," such as using small buttons and rolling or braiding hair. *Id.*

Plaintiff's contentions in this regard fall short. Her statements were not ignored. In fact, the ALJ recognized that her impairments cause numbness and pain in her extremities such as "constant neck and back pain and numbness radiating down her left arm." (Doc. No. 7-2, PageID 69). Likewise, while his assessment may lack specific mention of her inability to use small buttons or roll and braid hair, he noted that due to her symptoms, she needs assistance "getting dressed, or taking care of personal or grooming needs." *Id.*

The consideration of these limitations was accompanied by an extensive discussion of the objective medical evidence that related to her cervical and thoracic degenerative disease. Plaintiff's impairments were "substantiated by multiple notations throughout the medical file," including the records of various medical providers. (Doc. No. 7-2, PageID 68-69). As an example, the ALJ recognized Dr. Richard Donnini's observation that Plaintiff "experienced radiculopathy radiating to her left arm, and assessed her with cervical stenosis, spondylosis with myelopathy, and cervical and cervicothoracic disc disorder with myelopathy." *Id.* at 69. He also discussed the related medical testing conducted and/or reviewed by various medical providers: (1) CT from Dr. Wynn Adams in March 2016, (2) MRI reviewed by Dr. John German in April 2016, (3) MRI reviewed by Dr. Patrick Pagur in July 2016, (4) MRI reviewed by Dr. Jeffrey Cushman in June 2017, and (5) an EMG conducted by Dr. James Beegan in January 2018. *Id.* at 68-69.

Several relevant factors were also considered at the second step, which is contrary to Plaintiff's position. For example, he recognized her daily activities and found that she "testified substantially consistently with these statements." *Id.* at 69. In addition to the items noted above, some of these activities included an inability to drive due to numbness and pain that prevents her from looking around and an inability to stand for more than twenty minutes at a time. *Id.* Additionally, he acknowledged that she needs assistance when getting off the toilet and climbing stairs, has difficulty maintaining balance and lifting a gallon of milk, and that she cannot do household chores aside from giving instructions. *Id.* Yet, some of these statements were contrary to Dr. O'Connell's consultative evaluation which reflects that Plaintiff reported that "she attends to her grooming and hygiene regularly." (Doc. No. 7-7, PageID 999). She also indicated that she drives and "completes household chores such as light cleaning, grocery shopping, and meal preparation." *Id.*

Nevertheless, to accommodate Plaintiff's statements about her limitations, the ALJ imposed a sit/stand option in Plaintiff's residual functional capacity that permits her to alternate between sitting and standing every twenty minutes. (Doc. No. 7-2, PageID 67, 70). He also limited her to no more than occasionally climbing stairs. *Id.* at 67. And, by restricting her to light exertional work, Plaintiff was limited to lifting no more than twenty pounds and only frequent lifting and carrying up to ten pounds. *See* 20 C.F.R. 404.1567(b).

Additionally, he considered precipitating and aggravating factors. For example, he recognized that "standing for extended periods of time aggravates her blood pressure." (Doc. No. 7-2, PageID 69). And, as set forth above, he also evaluated the location,

10

duration, frequency and intensity of her pain—such as her constant and chronic neck and back pain, related weakness, and numbness that radiates down her left arm. *Id.*

He also considered Plaintiff's medication and treatment history. He recognized that Dr. Rogers prescribed her with pain medications after assessing her with a cervical disc disorder with radiculopathy and stenosis. (Doc. No. 7-2, PageID 69). He also wrote that she underwent a physical therapy evaluation with Amy Marie Burkemeier, P.T., and attended "a number of physical therapy treatment sessions," which seem to have helped her. *Id.* After her initial visits, she usually tolerated treatment without increased pain after her sessions. (Doc. No. 7-7, PageID 767, 770, 772). On her third visit, she reported that her low back pain was "much better" and that she was "feeling less neck pain." *Id.* at 772. She later reported "decreased neck pain for most of the weekend after last therapy session." *Id.* at 766. The ALJ also recognized that Plaintiff received an epidural steroid injection "[o]n a number of occasions" to alleviate pain symptoms. (Doc. No. 7-2, PageID 69).

Plaintiff's remaining challenges are also unavailing. She contends that she is more limited in her ability to use her upper extremities than reflected in her residual functional capacity. However, substantial evidence supports the related limitations set forth in her RFC which include frequent reaching, handling, fingering and feeling bilaterally in all directions and occasionally pushing and pulling with the upper left extremity. *Id.* at 67.

There are two medical opinions in the record that relate to Plaintiff's physical impairments. State agency reviewing physicians, Drs. Gail Mutchler and Lynne Torello, opined that Plaintiff should be limited to occasional push and/or pull hand controls on the left. (Doc. No. 7-3, PageID 404, 422). They further offered that she should be reduced to

11

frequent reaching, handling, fingering and feeling on the left. *Id.* at 405, 423. In large part, these limitations are reflected in Plaintiff's residual functional capacity with the exception that the ALJ opted for greater restriction in some regard by limiting Plaintiff to frequent reaching, handling, fingering and feeling bilaterally, rather than just on her left. Likewise, rather than adopting the remainder of Dr. Mutchler's and Dr. Torello's opinions wholesale, the ALJ rendered more restrictive limitations as to Plaintiff's ability to climb and perform postural movements "[i]n deference to [Plaintiff's] subjective complaints, [and] ongoing invasive treatments, including epidural steroid injections…" (Doc. No. 7-2, PageID 72). Further, as the Commissioner recognizes, no physician or medical provider offered that Plaintiff would require more restrictive manipulative limitations that those reflected in Plaintiff's residual functional capacity. (Doc. No. 13, PageID 1433).

Beyond these errors, Plaintiff contends that her impairments were considered individually, rather than in combination, and that her chronic sternum pain should have been considered a severe impairment. These contentions are also unpersuasive. Plaintiff's impairments were considered in combination. As an example, the ALJ considered the combined effect of Plaintiff's pain and distractibility, and her ability to use her upper extremities. He found that the combined effect of these impairments would "expose her to an unreasonable risk of harm" when climbing, and when exposed to unprotected heights and dangerous machinery, in part because such activities would require her to consistently and effectively manipulate her extremities with some level of concentration. *Id.* at 70.

Plaintiff also does not adequately develop her argument that her chronic sternum pain should have been considered a severe impairment. She vaguely asserts that the

medical evidence "convincingly shows [she] regularly reported recurring sternal, rib, and thoracic pain," and that medical sources documented the same. However, she does not cite to any related evidence, and instead argues that the ALJ's failure to identify this pain as a severe impairment "indicates further flaws in his RFC analysis." (Doc. No. 10, PageID 1411). However, as she acknowledges, the ALJ explained that he "could not find evidence in the record to indicate that [Plaintiff's] complaints [were] either related to her past sternum issues, or that these issues cause more than a minimal limitation on [her] ability to work." (Doc. No. 7-2, PageID 64). Absent any citations to related evidence to the contrary, the undersigned declines to find that error occurred in assessing her chronic sternum pain.

In sum, substantial evidence supports the assessment of Plaintiff's statements about the limiting effects of her symptoms. Her statements were reasonably accommodated in her residual functional capacity to the extent that they were consistent with the objective medical evidence. Therefore, Plaintiff's asserted error is without merit.

  **B. Sentence Six Remand**

Plaintiff further asserts that, if reversal or remand cannot be made on the evidence of record, then remand under sentence six of 42 U.S.C. § 405(g) is warranted. To obtain a sentence six remand under 42 U.S.C. § 405(g), the claimant must show that evidence is "new" and "material," and that there was good cause for failing to present it to the ALJ. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). The burden is on the claimant to demonstrate that remand is appropriate. *Ferguson*, 628 F.3d at 276.

For remand under these circumstances, "evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2568, 110 L. Ed. 2d 563 (1990)). Evidence is "'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988)). Additionally, a "claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present evidence for inclusion in the hearing before the ALJ." *Id.* (citation omitted).

Plaintiff sent approximately 260 pages of evidence to the Appeals Council. (Doc. No. 7-2, PageID 89-350) (Doc. No. 7-6, PageID 623-627). However, in her request for remand in the present case, Plaintiff solely focuses on the hospitalization records from January 2019 and the neurological psychological evaluation conducted by Dr. Mary Foster in July 2018. She does not base her request for remand on the remaining records.[2]

Remand is not warranted in this case because the hospitalization records and the neurological psychological evaluation are not new. Plaintiff asserts that the "evidence is new because it was not in evidence at the time" the non-disability decision was rendered on March 6, 2019. (Doc. No. 10, PageID 1412). Yet, this limited assertion does not speak to the proper standard—which is whether the evidence was available or in existence at the time of the administrative proceeding. Here, the hospitalization records from January 4,

---

[2] The vast majority of the other records submitted to the Appeals Council were not new, and were in existence for months, or even years, before the administrative hearing. (Doc. No. 7-2, PageID 89-350).

14

2019 through January 8, 2019, and the neurological psychological evaluation from July 2018, pre-date the non-disability decision rendered in March 2019. Thus, the records are not considered new for purposes of a sentence six remand. *See Elam v. Astrue*, No. 3:11-cv-234, 2012 WL 2409218, at *9 (S.D. Ohio, June 26, 2012) (Ovington, M.J.), report and recommendation, adopted, 2012 WL 4483422, (S.D. Ohio, Sept. 27, 2012) (Rice, D.J.) ("Because this evidence pre-dates the ALJ's decision, it is not new and does not support Plaintiff's request for a remand under sentence six of 42 U.S.C. 405(g)") (citation omitted).

Plaintiff also contends that "[t]he ALJ was aware of the neuropsychological testing and should have held the record open in order to obtain this report that contained the evidence he found missing." (Doc. No. 10, PageID 1414). This argument is not persuasive, and does not indicate that this evaluation—from 2018—is new. And notably, at the close of the hearing, the record remained open for the submission of additional evidence. But, on January 7, 2019, Plaintiff's previous counsel wrote a letter specifically indicating that "all evidence has been submitted" and requested that the record be closed. (Doc. No. 7-6, PageID 622). Furthermore, to the extent that Plaintiff argues the ALJ should have sought this evaluation, this argument is too unpersuasive because there was no heightened duty to develop the record in this case. *See Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) ("Only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record.").

Accordingly, remand under sentence six of 42 U.S.C. § 405(g) is not warranted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability decision is affirmed; and

2. The case is terminated on the Court's docket.

<u>July 19, 2021</u>                                      *s/Sharon L. Ovington*
                                                     Sharon L. Ovington
                                                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).